In re Gerald J. CENNAMO and Sharon K. Cennamo, Debtors.

Gerald J. CENNAMO and Sharon K. Cennamo, Plaintiffs,

v.

UNITED STATES of America and Does 1 through 5, inclusive, Defendants.

Bankruptcy No. SA 91–39648JW. Adv. No. SA 92–1061JW.

United States Bankruptcy Court, C.D. California.

Nov. 16, 1992.

Theodore Nunes, Beverly Hills, Cal., for plaintiffs/debtors, Gerald J. Cennamo and Sharon K. Cennamo.

Lourdes G. Baird, U.S. Atty., Mason C. Lewis, Asst. U.S. Atty., Chief Tax Div., Edward M. Robbins, Jr., Asst. U.S. Atty., Los Angeles, Cal., for defendant, U.S.

## MEMORANDUM OF DECISION

JOHN J. WILSON, Bankruptcy Judge.

Gerald J. Cennamo and Sharon K. Cennamo ("Debtors") claim that an invalid assessment listed on a Notice of Federal Tax Lien for 26 U.S.C. §§ 6700 and 6701 tax penalties renders the lien invalid. Alternatively, if the lien is valid, the Debtors seek to invoke the doctrine of equitable subordination under 11 U.S.C. § 510(c) of the Bankruptcy Code ("Code") so as to subordinate the §§ 6700 and 6701 tax penalties to the 26 U.S.C. § 6672 tax penalty.

## I. STATEMENT OF FACTS

The Debtors filed a petition under Chapter 7 of the Code on July 12, 1989. The Debtors were granted a discharge on December 28, 1989. Subsequently, the Debtors filed a voluntary petition under Chapter 13 of the Code on October 4, 1991. On January 27, 1992, the Internal Revenue Service ("IRS") filed a proof of claim in the amount of $1,026,431.26 for unpaid tax liabilities pursuant to 26 U.S.C. §§ 6700, 6701, and 6672. On February 3, 1992, the Debtors filed an adversary complaint against the United States of America ("Defendant").

The Debtors' adversary complaint alleged three causes of action against the Defendant: (1) for an erroneous federal tax lien under 11 U.S.C. § 502(b)(1); (2) for a limitation of a federal tax lien under 11 U.S.C. § 502(b)(3); (3) and for equitable subordination under 11 U.S.C. § 510(c). The complaint is based upon the following undisputed facts.

Gerald J. Cennamo was the President and sole shareholder of Teachers Tax and Financial Planners, a corporation specializing in financial planning and insurance. For taxable year ending December 31, 1988, the IRS made multiple Federal tax lien assessments against Mr. Cennamo pursuant to 26 U.S.C. § 6700 for promoting abusive tax shelters, and 26 U.S.C. § 6701 for aiding and abetting the preparation of a tax return which understated tax liability. As many of the assessments were erroneous, the IRS on July 10 and July 17, 1989 abated all of the § 6700 and § 6701 assessments except those assessed on March 13, 1989.

On January 18, 1989, the IRS filed a Notice of Federal Tax Lien ("NFTL") against the Debtors' residence for the § 6700 and § 6701 liabilities. The unpaid balance of each assessment was, respectively, $373,650.00 and $236,000.00. This lien reflected penalties for the taxable year ending December 31, 1988. The NFTL, however, incorrectly identified the assessment date for these liabilities as January 17, 1989.

On March 15, 1990, the IRS refiled the NFTL, with an assessment date of March 13, 1989. This time, the NFTL correctly listed the amount of the lien as $633,533.22, but incorrectly listed the tax lien as that being assessed pursuant to § 6672. In reality, this NFTL was filed for tax liabilities pursuant to § 6700 and § 6701 liabilities.

On May 30, 1991, the IRS, pursuant to 26 U.S.C. § 6672 filed a NFTL against the Debtors' residence in the amount of $97,-815.68. This tax lien was assessed against the Debtors for a 100% tax penalty based upon the Debtors' failure to collect and pay over payroll taxes under the Withholding and Federal Insurance Contribution Act ("FICA"). The assessment date was listed as May 10, 1990, for taxable periods ending September 30, 1984, March 31, 1985 through March 31, 1986, and September 30, 1986.

Pursuant to a stipulation the federal tax liens encumbering the Debtors' residence were released to allow the Debtors to sell their residence. The Debtors sold their residence for $350,000. After disbursing all sums due and owing to the holder of the first deed of trust and deducting all associated closing costs, net proceeds from the sale were approximately $110,000. The net proceeds continue to be subject to the federal tax liens and the proceeds have been sequestered by an escrow company pending resolution of this controversy.

In their trial brief, the IRS conceded the Debtors' second claim for relief. The second claim for relief was that the IRS' claim for the § 6700 and § 6701 penalties should be allowed, if at all, only to the extent of the Debtors' proceeds of sale from their residence. This is so because the Debtors' § 6700 and § 6701 penalties were discharged in their prior Chapter 7 case, filed on July 12, 1989. In that case, the IRS was scheduled as a creditor of the estate and the Debtors were granted a discharge on December 28, 1989.[1]

Both parties concede that the Debtors' discharge operated only as a discharge of the in personam liability to the IRS and did not eliminate the pre-petition tax liens as the IRS retained a legally enforceable in rem claim for the § 6700 and 6701 penalties. *In re Isom*, 901 F.2d 744, 745 (9th Cir.1990). Under the Code, unless the Debtor or trustee take action to avoid a lien, the lien remains on the Debtors' exempt property. 11 U.S.C. § 522(c)(2)(1988 & Supp. II 1990).[2] Neither the Debtors nor the trustee avoided the IRS lien in the prior Chapter 7 case. 11 U.S.C. § 522(c). Accordingly, both parties concede that the in rem liability still exists, but only to the extent of the proceeds held in escrow.

Therefore, only two issues remain in dispute. First, whether an incorrect assessment date on a Notice of Federal Tax Lien renders the lien invalid. Second, if the IRS lien is valid, may the doctrine of equitable subordination be invoked to subordinate the § 6700 and § 6701 tax liens to the § 6672 tax lien.

## II. DISCUSSION

### A. *Validity of Tax Liens*

The Debtors claim that the NFTL filed with respect to the § 6700 and § 6701 penalties should be released since the NFTL lists an incorrect assessment date. The

---

**1.** The Bankruptcy Code provides that non-pecuniary loss penalties which relate to a transaction or event that occurred within three years of the filing of a bankruptcy petition are non-dischargeable. 11 U.S.C. § 523(a)(7) (1988). The penalties assessed pursuant to § 6700 and § 6701 were the result of transactions which occurred during taxable years 1982 through 1985. Accordingly, these penalties were clearly not within the three year period specified in § 523(a)(7) and were correctly discharged.

**2.** 11 U.S.C. § 522(c)(2) provides in pertinent part:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

. . . .

(2) a debt secured by a lien that is—

(A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not avoided under section 506(d) of this title . . .

Debtors contend that the lien is unenforceable as a matter of law and has the same status as a tax assessment rendered unenforceable by the passage of time. In support of this contention, the Debtors rely solely upon Internal Revenue Manual §§ 5717.23 and 5719.1.[3]

■ The Debtors' reliance on the Internal Revenue Manual is misplaced as the Manual was adopted solely for the internal administration of the IRS. *United States v. Will,* 671 F.2d 963, 967 (6th Cir.1982). The Manual neither protects nor confers any rights upon the taxpayer. *Id.* Since the IRS procedures are directory and not mandatory, they do not have the force and effect of law. *Rosenberg v. Commissioner of Internal Revenue,* 450 F.2d 529, 532–33 (10th Cir.1971); *See Einhorn v. Dewitt,* 618 F.2d 347, 350 (5th Cir.1980). Consequently, the Debtors' argument is without merit.

■ Since the federal tax lien law is a federal statute, federal law establishes the content of a sufficient filing. *United States v. Brosnan,* 363 U.S. 237, 240, 80 S.Ct. 1108, 1110, 4 L.Ed.2d 1192 (1960); *U.S. v. Polk,* 822 F.2d 871, 873 (9th Cir. 1987). The Secretary of the Treasury determines the proper form of filing for a tax lien. 26 U.S.C. § 6323(f)(3) (1988).

■ The Treasury Regulations provide that a NFTL shall be filed and the NFTL is valid notwithstanding any other provision of law regarding the form or content of a notice of lien. *Id.* The Treasury Regulations also provide for supplemental assessments for the purpose of correcting or completing the original assessment if any assessment is incomplete or incorrect in any material respect. 26 C.F.R. § 301.6204–1 (1992). Instead of indicating that the original NFTL is void, this shows that the originally erroneous assessment remains valid despite the fact that it is not completely accurate. *Heck v. Walters,* 523 F.2d 23, 24 (9th Cir.1975).

■ The purpose of the NFTL is to give constructive notice, and where there is such notice, a minor defect in filing will be overlooked. *Goldstein v. Bankers Commercial Corp.,* 152 F.Supp. 856 (S.D.N.Y. 1957), *aff'd* 257 F.2d 48 (2d Cir.1958). For an assessment to be void, it must be arbitrary in the sense that the calculation has no support and the true amount of tax owed is incapable of being ascertained. *United States v. Schroeder,* 900 F.2d 1144, 1149 (7th Cir.1990). In *Schroeder* the Court held that the fact that an assessment was too high did not make the assessment void. *Id.* The Court reasoned that "[t]here [we]re plenty of records, documents, and other "foundational" items upon which a correct determination of the defendants' liability may be made." *Id.*

There is no dispute in this case that the original NFTL filed against the Debtors' residence was filed in the correct location nor is there a dispute that the NFTL correctly listed the amount owing under the Debtors' legal name. Thus, despite the erroneous assessment date, the NFTL provided constructive notice to the Debtors that there existed a federal tax liability for § 6700 and § 6701 liabilities. As the IRS had possession of the foundational records which led them to file the NFTL against the Debtors' residence, had the Debtors' sought review of those records, they ultimately would have been led to a correct determination of their tax liability. Accordingly, this Court finds that despite the

---

**3.** These sections provide in pertinent part:
§ 5717.23
**Liability is Unenforceable**
(1) the word "unenforceable" means unenforceable as a matter of law, and not merely uncollectible.
§ 5719.1
**General**
(1) On rare occasions, Form 668(Y) may have been erroneously or inadvertently filed and although the lien(s) is(are) timely released, the

fact of filing impairs the availability of credit to the taxpayer. When such situation is identified, Pattern letter P–544 should be prepared and furnished to the taxpayer.... Pattern letter P–544 ... cannot be considered as a substitute for or issued in lieu of, a Certificate of Release of Federal Tax Lien or any other certificate authorized by IRC section 6325.

....

(4) In ... [this situation] ... collection of the filing and/or release should be waived.

erroneous assessment date, the NFTL is valid.

### B. Equitable Subordination

■ Under applicable California law, the § 6700 and § 6701 liens are accorded priority of payment over the § 6672 lien, having been recorded approximately fourteen months earlier. See Cal.Civ.Code § 2897 (West 1974). The Debtors seek to invoke the doctrine of equitable subordination, under 11 U.S.C. § 510(c)(1), so as to reverse the order of priority of these liens.

The Debtors essentially offer two reasons for invoking equitable subordination. First, the cost to contest the § 6700 and § 6701 tax penalties was prohibitive. Therefore, the Debtors did not have the opportunity to contest the penalties.

■ To contest tax penalties before collection requires a taxpayer to pay fifteen percent of the penalty within thirty days of the notice. 26 U.S.C. § 6703(c)(1) (1988 & Supp. II 1990). As the IRS overassessed the Debtors by a factor of five, the Debtors argue that they were denied due process based upon their having to pay 15% of the overassessed rate instead of the 15% for the properly assessed amount. Since this Court now affords judicial review of their assessment, the Debtors due process claim is moot. See In re Burns, 974 F.2d 1064 (9th Cir.1992).

The Debtors also claim that to deny equitable subordination would hinder their fresh start envisioned by the Bankruptcy Code. If the order of priority is not reversed, the § 6700 and § 6701 liens will be paid with the entire proceeds of sale presently held in escrow and the remaining balance of the lien will be abated, since the 26 U.S.C. § 6700 and § 6701 tax assessments underlying the liens were discharged in the Debtors' prior bankruptcy case. The § 6672 lien, however, would remain fully intact.

■ Under principles of equitable subordination, a court may subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest. 11 U.S.C. § 510(c)(1) (1988). The classic case of equitable subordination, as developed by case law, involved inequitable conduct by the claimant resulting in injury to other creditors. See, In the Matter of Mobile Steel Co., 563 F.2d 692 (5th Cir. 1977); 3 Collier on Bankruptcy, ¶ 510.05 at 510–9 (L. King 15th ed. 1992).

However, inequitable conduct does not represent the exclusive basis for invocation of equitable subordination. Matter of Virtual Network Services Corp., 902 F.2d 1246, 1250 (7th Cir.1990). Courts now recognize that the subordination of penalty claims may be necessary to avoid the inequity of requiring innocent creditors to share the cost of the debtor's misconduct. See, e.g. In re Colin, 44 B.R. 806, 810 (Bankr.S.D.N.Y.1984); In re Quality Sign Co., 51 B.R. 351 (Bankr.S.D.Ind.1985); In re Merwede, 84 B.R. 11 (Bankr.D.Conn. 1988); In re A.H. Robins Co., Inc., 89 B.R. 555 (E.D.Va.1988); In re Airlift Int'l, Inc., 97 B.R. 664 (Bankr.S.D.Fla.1989). The overriding policy concern is that if penalties are to be paid not by the alleged wrongdoer, but by his estate, the purpose of the penalty is not served. In re Colin, 44 B.R. 806, 810 (Bankr.S.D.N.Y.1984).

■ In this case, inequitable conduct by the claimant is not at issue. Furthermore, other than the IRS, there remains no other creditors, either secured or unsecured, of the estate. Therefore, this Court need not be concerned that innocent creditors would be forced to share the cost of the Debtors' conduct. The Debtors are simply seeking to rid themselves of a non-dischargeable debt by using the net proceeds from the sale of their residence to pay the § 6672 penalty lien, leaving little or no funds available to apply to the § 6700 and § 6701 liens which would then be discharged.

To invoke the doctrine of equitable subordination for these Debtors would, in fact, be patently inequitable. Leaving the priority of the liens untouched would effectively hold the Debtors solely liable for the wrongs they committed. This is consistent with the purpose of instituting IRS penalties, which is to deter future wrongful con-

duct on behalf of the taxpayer. Therefore, this Court finds that the doctrine of equitable subordination is, under these circumstances, not proper.

### III. CONCLUSION

This Court's review of applicable law compels the conclusion that the Notice of Federal Tax Lien for 26 U.S.C. §§ 6700 and 6701 tax penalties filed against the Debtors' residence is valid and the 26 U.S.C. § 6672 tax lien remains fully intact. Furthermore, the Debtors' request to invoke the doctrine of equitable subordination under 11 U.S.C. § 510(c) is denied.

This memorandum of decision contains this Court's findings of fact and conclusions of law. Counsel for the Defendants shall lodge and serve a proposed order consistent with this memorandum of decision.